IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CARDINAL HEALTH 414, INC.,           )
                                     )
                 Plaintiff,          )
                                     )
        v.                           )      1:06CV570
                                     )
SCHWARZ PROPERTIES, INC., and        )
JEFFREY SCHWARZ,                     )
                                     )
                 Defendants.         )

ORDER AND MEMORANDUM OPINION AND RECOMMENDATION
OF MAGISTRATE JUDGE ELIASON

I. Facts and Claims

Defendants request summary judgment (docket no. 70), while Plaintiff has filed a motion for partial summary judgment (docket no. 72). The basic facts of the case, which are undisputed unless otherwise noted, are as follows.

Defendant Schwarz Properties leased warehouse space located in Asheboro, North Carolina, to Juan Stimpson. Stimpson used the warehouse space for his furniture delivery and storage business. Among his clients was a nuclear pharmacy business called Geodax Technology, for which he stored equipment. Plaintiff later acquired Geodax and continued the relationship with Stimpson. Stimpson would pick up equipment, store it as needed, and then deliver it to a new location as directed. (Cook Dep., Docket No. 72, Attach. 5 at 16-17, 23, 44-45, 79.)

In August 2003, Stimpson began having trouble paying his full rent to Schwarz Properties. Eventually, it filed a summary ejectment proceeding and was awarded possession of the property.

A Writ of Possession was issued and Stimpson was served with a notice of eviction on April 11, 2006. He was given ten days to vacate the premises. (Brown Aff., Docket No. 70, Ex. 1, ¶¶ 5-11.)

When April 21, 2006 arrived, Stimpson had not removed all of the personal property from the warehouse. He asked if he could be given until April 23, 2006 to remove the property. That request was granted, but he did not appear and remove the property. He then asked for more time. Defendants, after consulting with an attorney and the local sheriff, refused the second request. (Id. ¶¶ 12-18.)

On May 2, 2006, Schwarz Properties sent a Notice of Sale to Stimpson to inform him that it intended to sell the property that he had left behind. (Brown Dep., Docket No. 72, Attach. 1, Ex. 73.) Stimpson then filed a complaint in Randolph County District Court claiming conversion of the property and seeking a temporary restraining order and injunction. The complaint alleged that he owned the property in the warehouse. However, at a hearing on the motion for preliminary injunction on May 9, 2006, Stimpson testified that ninety-five percent of the property was owned by others. (Brown Dep., Docket No. 72, Attach. 1 at 80-82.) Based partly on that testimony, the motion for a preliminary injunction was denied. (Docket No. 70, Ex. 1I.)

Schwarz Properties then sent Stimpson a second Notice of Sale on May 26, 2006, informing him that the sale of the property in the warehouse would take place on June 15, 2006. (Brown Dep., Docket No. 72, Attach. 1, Ex. 78.) On June 14, 2006, Stimpson's counsel

-2-

delivered a letter to Schwarz Properties at about 5:00 in the evening. (Cook Dep., Docket No. 72, Attach. 5, Ex. 4.) The letter was received and reviewed by Brandy Brown, one of Defendants' employees. (Brown Dep., Docket No. 72, Attach. 1 at 96.) It stated that the property in the warehouse belonged to people other than Stimpson. Attached to the letter was a list of the purported owners of the property, including Plaintiff. However, it did not include contact information for Plaintiff. Brown attempted to show the letter to Defendant Jeffrey Schwarz, but he stated that it was too late in the day and that he was leaving. (Id. at 96-100.) Schwarz denies ever having seen the letter prior to his deposition in this case. (Schwarz Dep., Docket No. 72, Attach. 7 at 103-104.)

Plaintiff first learned of the auction on June 14, 2006. That evening, Stimpson called Don Courtney, his contact with Plaintiff. They met and Stimpson somewhat explained the situation to Courtney. (Courtney Dep., Docket No. 72, Attach. 6 at 27-28.) The auction took place the next day at the warehouse, where it was conducted by Action Auctions, Inc.[1] On the morning of the auction, Courtney spoke by telephone with a person working for Action Auctions. He told her that some of the property to be auctioned belonged to Plaintiff and then asked that the auction be stopped. (Id. at 28-29.) Courtney also went to the auction, where he spoke to a woman who was registering buyers. He informed her that he represented Plaintiff, that Plaintiff's property was being sold illegally, and

---

[1] Action Auctions, Inc. was originally a defendant in this case, but was dismissed by Plaintiff on February 28, 2008. (Docket No. 65.)

-3-

that he wanted the auction stopped. She told him that they had a court order allowing the sale of the property being sold. (Id. at 30-31.) Courtney then went into the auction, where he met Lashaun Cook, Stimpson's former office manager, who had a video camera. He instructed her to videotape the property. Courtney also took photographs with his cellular telephone. (Id. at 32-34.) He did not bid on any of the property because he had not been able to reach his supervisors to discuss the situation and receive authority to bid. (Id. at 42.)

Courtney claims that he eventually spoke with Jeffrey Schwarz by telephone after leaving a message with Schwarz's secretary. He stated that Schwarz called him back. Schwarz allegedly confirmed that he intended to sell everything in the warehouse, stated that he had a court order, and told Courtney that he could call Schwarz's attorney with any questions. (Id. at 35.) Courtney later went outside where Cook was filming buyers and their property in the parking lot. As a result, they were approached by an employee of Action Auction who told them to leave the property or face arrest. They then left. (Id. at 37-41.)

Schwarz denies speaking with Courtney on the day of the auction, or at any other time, or even knowing who Courtney is. He claims to have spoken to no one representing Plaintiff on or before the day of the auction. (Schwarz. Dep., Docket No. 72, Attach. 7 at 114-15.) He does agree that he was contacted by someone from Action Auctions about a woman disrupting the auction and videotaping the customers in a way that caused them to complain.

-4-

After consulting with an attorney, either Schwarz or Brandy Brown spoke with Action Auctions and told them to tell the woman to leave the property. (<u>Id.</u> at 112-113.)

The property in the warehouse was sold for a total of $12,382.50, of which Schwarz Properties received $8,462.85 after expenses and the fee to Action Actions. (Brown Aff., Docket No. 70, Ex. 1. ¶¶ 41-42.) Plaintiff alleges that the replacement value of its property alone was $127,530.00. However, Plaintiff was eventually able to recover some of its property after the sale. (Courtney Dep., Docket No. 72, Attach. 6 at 74-77.)

Based on these facts, Plaintiff raised three claims for relief against both Schwarz Properties and Jeffrey Schwarz as an individual. The first is a common law claim for the conversion of Plaintiff's property. The second alleges Defendants sold Plaintiff's property at public auction without following the requirements of N.C. Gen. Stat. § 44A-1, <u>et seq</u>. Finally, Plaintiff claims that Defendants' sale of its property, with knowledge that at least some of the property in the warehouse belonged to Plaintiff and without giving Plaintiff notice or a chance to remove its property, constituted an unfair or deceptive trade practice in violation of N.C. Gen. Stat. § 75-1.1.

## II. Applicable Law

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled

-5-

to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. <u>Pachaly v. City of Lynchburg</u>, 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, the party cannot rest on conclusory statements, but must provide specific facts, particularly when that party has the burden of proof on an issue. <u>Id.</u> The mere fact that both parties request summary judgment does not necessarily mean that the material facts are undisputed. <u>World-Wide Rights Ltd. Partnership v. Combe Inc.</u>, 955 F.2d 242, 244 (4th Cir. 1992). "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, <u>in the form of admissible evidence</u>, that could carry the burden of proof of his claim at trial." <u>Mitchell v. Data General Corp.</u>, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). A mere scintilla of evidence will not suffice. Rather, there must be enough evidence for a jury to render a verdict in favor of the party making a claim. A few isolated facts are not sufficient. <u>Sibley v. Lutheran Hosp. of Maryland, Inc.</u>, 871 F.2d 479 (4th Cir. 1989).

Further, because all of Plaintiff's claims arise under state law, special rules apply. When state law is unclear, the federal court must rule in such a manner as it appears the highest state court would rule if presented with the issue. Where the state's highest court has not decided the particular issue, the federal court should examine the rulings of the lower state courts. Rulings of the lower courts may be considered as persuasive

-6-

evidence of state law, but they are not binding on the federal court should it be convinced the highest court would rule to the contrary. <u>Sanderson v. Rice</u>, 777 F.2d 902, 903 (4th Cir. 1985). Furthermore, the federal court must rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law. <u>Burris Chemical, Inc. v. USX Corp.</u>, 10 F.3d 243 (4th Cir. 1993).

### III. Discussion

### A. Individual Liability of Jeffrey Schwarz

Before addressing each of Plaintiff's three claims, there is a threshold issue which must be discussed. Plaintiff has raised its claims not only against the corporate defendant Schwarz Properties, but also against Jeffrey Schwarz individually. In their summary judgment motion, Defendants argue that he cannot be individually liable because any action that he took was done on behalf of, and as an agent for, Defendant Schwarz Properties. The parties then debate whether or not Schwarz Properties truly has a separate identity from Schwarz and whether the corporate veil should be pierced.

Plaintiff's corporate veil piercing argument should be rejected. Plaintiff has not supplied sufficient proof to substantiate this theory of liability. The corporate veil can be pierced only when a corporation operates as a mere instrumentality of an individual. <u>Saft America, Inc. v. Plainview Batteries, Inc.</u>,

\_\_\_ N.C. App. \_\_\_, 659 S.E.2d 39, 45-46, <u>rev.</u> <u>allowed</u>, \_\_\_ N.C. \_\_\_, 666 S.E.2d 488 (2008). A party seeking to satisfy the instrumentality rule must show:

> (1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

> (2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

> (3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

<u>Id.</u> at \_\_\_, 659 S.E.2d at 46.

Although Jeffrey Schwarz certainly has a great deal of control over Schwarz Properties, it is still questionable as to whether Plaintiff could produce enough proof to support the first element. This question does not need to be decided because Plaintiff has not satisfied the second and third elements. As will be discussed below, Schwarz was personally involved in some parts of the sale of Plaintiff's property. However, as to other key parts, there appears to be evidence that he either was unaware of critical facts, or was aware only in a passing way. In any event, several of the actions that led to the sale of Plaintiff's property appear to have been undertaken by his subordinates without his knowledge and on behalf of the corporate defendant. Jeffrey Schwarz's control, considerable though it may have been, does not appear to have been used by him to improperly sell Plaintiff's property. If

-8-

this is so, then his control was not the proximate cause of the
sale and he could not be held liable, except as will be explained
next, for any torts he may have committed in his individual
capacity.

As to an employee's personal liability when acting for a
corporation, the North Carolina Court of Appeals has explained:

> It is well settled that one is personally liable for all
> torts committed by him, including negligence,
> notwithstanding that he may have acted as agent for
> another or as an officer for a corporation. Palomino
> Mills, Inc. v. Davidson Mills Corp., 230 N.C. 286, 52
> S.E.2d 915 (1949); see also Esteel Co. v. Goodman, 82
> N.C. App. 692, 348 S.E.2d 153 (1986), disc. rev. denied,
> 318 N.C. 693, 351 S.E.2d 745 (1987) (An officer of a
> corporation who commits a tort is individually liable for
> that tort, even though acting on behalf of the
> corporation in committing the act.). Furthermore, the
> potential for corporate liability, in addition to
> individual liability, does not shield the individual
> tortfeasor from liability. Rather, it provides the
> injured party a choice as to which party to hold liable
> for the tort. Palomino Mills, supra 230 N.C. at 292, 52
> S.E.2d at 919.

Strang v. Hollowell, 97 N.C. App. 316, 318-19, 387 S.E.2d 664, 666
(1990). Therefore, Jeffrey Schwarz may be personally liable if the
facts support a claim against him because of actions taken by him.
North Carolina courts have also applied this principle of personal
liability to statutory violations, including unfair or deceptive
trade practices. Baker v. Rushing, 104 N.C. App. 240, 247-48, 409
S.E.2d 108, 112 (1991)(citing Strang and approving individual
liability for an agent who commits unfair and deceptive trade
practices). Jeffrey Schwarz is not entitled to summary judgment
simply because he acted on behalf of Schwarz Properties. Instead,

his liability, or lack thereof, will be determined by his personal involvement with the facts underlying each of Plaintiff's claims.

## B. Conversion

Both parties have moved for summary judgment on Plaintiff's conversion claim. Defendants argue that the tort of common law conversion has been preempted by N.C. Gen. Stat. § 44A-1, _et seq_. These statutes grant liens on personal property to certain parties in certain situations. Defendants assert that these statutes supersede the common law and, consequently, under the statutes they were entitled to a lien on, and possession of, Plaintiff's property. In addition, they argue that their possession and sale of Plaintiff's property did not constitute conversion because it was authorized by N.C. Gen. Stat. §§ 44A-2 and 44A-4. Plaintiff responds, and makes its own request for summary judgment, by contending that common law conversion is not preempted where a lien is not created under N.C. Gen. Stat. § 44A-2, such as where a party does not follow the procedures of N.C. Gen. Stat. § 44A-4. It then argues that Defendants did not properly follow the procedures of the statute.

The Court finds that the statutes relied on by Defendants do supersede and control common law conversion claims. Conversion under North Carolina law is "'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" _Griffith v. Glen Wood Co., Inc._, 184 N.C. App. 206, 646 S.E.2d 550 (2007) (quoting _Lake Mary Ltd._

-10-

Partnership. v. Johnston, 145 N.C. App. 525, 531, 551 S.E.2d 546, 552 (2001)). It may be noted that this definition does not provide a method for determining whether a particular interference with property rights is "authorized" or "unauthorized." That determination turns on the circumstances of each particular case. Madey v. Duke University, 336 F. Supp. 2d 583, 598 (M.D.N.C. 2004).

In dealing with situations involving sales pursuant to liens created by Chapter 44A, the North Carolina courts have made it clear that a lien allowing a party to sell certain property "authorizes" the sale for purposes of a conversion claim. This is true even where the sale itself may not have been conducted using the procedures required by N.C. Gen. Stat. § 44A-4. In other words, if the lien allowing the sale is valid, there is no conversion. See Rowell v. North Carolina Equipment Co., 146 N.C. App. 431, 425-36, 552 S.E.2d 274, 277 (2001)(citing Drummond v. Cordell, 73 N.C. App. 438, 439, 326 S.E.2d 292, 293 (1985)). Instead, a defective sale pursuant to a valid lien gives rise only to a claim under Chapter 44A whereby a party may recover a statutory penalty and actual damages. Id. at 436-37, 552 S.E.2d 277-78. For this reason, the question of whether or not Plaintiff's conversion claim survives summary judgment really turns on arguments surrounding a portion of its statutory claim made under Chapter 44A. If Defendants did not have a valid lien on Plaintiff's property, the sale of Plaintiff's property can also be a conversion. If the lien was valid, there was no conversion even if the sale was not conducted in accord with statutory

-11-

requirements.  The validity of Defendants' lien will be discussed next.

### C. Claim Based on N.C. Gen. Stat. § 44A-2

Most of the parties' arguments appropriately center on the question of whether Defendants[2] complied with the applicable statutes in dealing with Plaintiff's property.  The first key point of disagreement between the parties is whether or not Defendants ever obtained a statutory lien on Plaintiff's property.  Plaintiff argues that they did not because language near the start of N.C. Gen. Stat. § 44A-2(e) allows a lien only over property to which the tenant has "legal title" and that Stimpson never had "legal title" to the property.  Defendants, on the other hand, state that a lien on Plaintiff's property did exist because other language in that subsection allowed them to take possession of the property, while N.C. Gen. Stat. § 44A-3 provides that a lien arose when the Defendants acquired possession of the property.

The problem in this case arises out of ambiguous legislative language trying to encompass a broad area covering many disparate factual scenarios.  As will be seen, the term "legal title" as used in the statute has a very uncertain meaning.  No North Carolina decision has been found interpreting the statute.

In a situation where a statute is ambiguous or a certain reading would lead to absurd results or a meaning clearly not intended, this Court should employ a construction most fairly

_____

[2]At this point, for the sake of simplicity, the Court will refer to the Defendants collectively.  However, Jeffrey Schwarz's individual liability on this claim will be discussed later.

-12-

contemplated by or embedded in the statute and legislative scheme as a whole. _Newport News Shipbuilding and Dry Dock Co. v. Brown_, 376 F.3d 245 (4th Cir. 2004). Apparently anomalous terms should be read in _pari materia_ with the other terms and parts of the statute. _Wachovia Bank v. Schmidt_, 388 F.3d 414 (4th Cir. 2004).

North Carolina General Statute § 44A-2 is labeled "Persons entitled to lien on personal property." It then goes on to describe various classes of persons, such as repairers of motor vehicles, operators of hotels and motels, boarders of animals, etc., who may have liens on property in their possession if the statutory requirements are met. The pertinent subsection in the present case is subsection (e), which applies to lessors of "nonresidential demised premises."[3] It first states that, if a

---

[3] Any lessor of nonresidential demised premises has a lien on all furniture, furnishings, trade fixtures, equipment and other personal property to which the tenant has legal title and which remains on the demised premises if (i) the tenant has vacated the premises for 21 or more days after the paid rental period has expired, and (ii) the lessor has a lawful claim for damages against the tenant. If the tenant has vacated the premises for 21 or more days after the expiration of the paid rental period, or if the lessor has received a judgment for possession of the premises which is executable and the tenant has vacated the premises, then all property remaining on the premises may be removed and placed in storage. If the total value of all property remaining on the premises is less than one hundred dollars ($100.00), then it shall be deemed abandoned five days after the tenant has vacated the premises, and the lessor may remove it and may donate it to any charitable institution or organization. Provided, the lessor shall not have a lien if there is an agreement between the lessor or his agent and the tenant that the lessor shall not have a lien. This lien shall be for the amount of any rents which were due the lessor at the time the tenant vacated the premises and for the time, up to 60 days, from the vacating of the premises to the date of sale; and for any sums necessary to repair damages to the premises caused by the tenant, normal wear and tear excepted; and for reasonable costs and expenses of sale. The lien created by this subsection shall be enforced by sale at public
(continued...)

-13-

tenant has vacated the premises for 21 or more days after the rental period has expired and the lessor has a claim for damages against the tenant, the lessor "has a lien on all furniture, furnishings, trade fixtures, equipment and other personal property to which <u>the tenant has legal title</u> and which remains on the demised premises." (emphasis added.) This is the language relied on by Plaintiff. It maintains that Defendants could only get a lien on property to which Stimpson had legal title; i.e., not Plaintiff's property.

One problem with Plaintiff's argument is that the statute does not define "legal title."[4] The definition portion of section 44A-1 defines "legal possessor" and "owner," but not a person with "legal title." An "owner" is a person with "legal title," but "owner" also covers an owner's agents. A "legal possessor" is a person entrusted with the owner's property or in possession by operation of law. In the instant case, Plaintiff claims to be the owner of the goods, but, if so, its agent Stimpson was also an owner. Thus, by a literal reading of the statute, Stimpson could, in a way, be

---

[3](...continued)
　　　　sale pursuant to the provisions of G.S. 44A-4(e).

N.C. Gen. Stat. § 44A-2(e).

　[4]The term "legal title" is itself ambiguous. Is "legal title" different from having "title" to property? Is there such a thing as "illegal title"? Also, the term "title" works well enough for real and personal property, which is specifically identified in papers or title documents and often registered with the government. It is less than helpful or understandable for most personal property. For example, what is the manifestation of "legal title" for a generator, a hammer, or a chair. In fact, Plaintiff never produces any documents showing it has "legal title" to the property, as opposed to Stimpson or anyone else.

-14-

said to be a person with as much legal title to Plaintiff's goods as Plaintiff, at least for lien purposes.

Next, use of the term "legal title" is anomalous with respect to other portions of the statute. In section 44A-2(a)-(d),(f)&(g), the statute references owners and/or legal possessors. And, subsection (e2) does not even use the words owner, legal possessor, or legal title, but allows a lien on "personal property including the manufactured home titled in the name of the tenant" for the lease of the space on which the home sits. Nevertheless, looking at section 44A-2 as a whole, it seems clear that the legislature wished, in general, to provide for liens on the property of the owner or legal possessor of the property. That is the intent of the section as a whole. Thus, when the legislature spoke of property to which the tenant has "legal title," it must have intended this to encompass the owner or legal possessor of the property, unless such inclusion would be absurd.

Moreover, interpreting "tenant with legal title" to encompass owner and legal possessor, avoids an absurd result within subsection (e) itself. That subsection states that, if the premises have been vacated for 21 or more days or the lessor has a judgment for possession of the premises which is executable and the tenant has vacated the premises, the lessor can then remove "all property remaining on the premises." It does not limit the property to that for which the tenant has "legal title." Thereafter, the property can be given to charity if valued at less than $100 or stored. As for stored property, it would seem clear

-15-

that the legislature intended that there be a lien on the property so that it could be sold pursuant to the statute. Otherwise, the lessor would have to store it in perpetuity, with no way for the tenant to recover it--a highly unlikely intention.[5]

North Carolina General Statute § 44A-3 supports the Court's interpretation of section 44A-2(e). That statute states that liens conferred under the Article arise when the lienor acquires possession of the property and end when the lienor either gives up possession of the property or "when an owner, his agent, a legal possessor or any other person having a security or other interest in the property tenders prior to sale the amount secured by the lien plus reasonable storage, boarding and other expenses incurred by the lienor." As Defendants point out, the statute ties the creation of a lien to the acquisition of the personal property. As noted earlier, N.C. Gen. Stat. § 44A-2 allows Defendants to "acquire" Plaintiff's property irrespective of a stilted reliance on "legal title" and this strongly suggests that a lien then arose at that time under N.C. Gen. Stat. § 44A-3.

_____

[5]Were the Court to adopt Plaintiff's reading of the statute, the landlord would have the right to exercise this absolute control over the property no matter who has legal title to it. Plaintiff would have the statute read to only allow a landlord to remove and store property, but never dispose of it, if the value was over $100.00. Also, Plaintiff does not explain how, or by what standard, a landlord is supposed to determine who holds legal title to the personal property. There is no definition of legal title, and Plaintiff supplies none. And, practically, if a tenant is absent or uncooperative, a landlord would have no way of differentiating between property for which the former tenant had legal title and property for which he did not. The landlord could never then be sure which property it could safely sell pursuant to a lien and which property it had to place into storage.

Finally, a construction of section 44A-2(e) as allowing a lien to arise when the tenant was the owner or legal possessor of the property does not create other problems or otherwise injure Plaintiff or other third parties. North Carolina General Statute § 44A-3 acknowledges that a variety of persons may have a legal interest in property that is subject to a lien. It also provides a recourse for such persons. It allows them to retrieve their property by satisfying the lien and covering a lienor's storage costs.[6] As will be discussed in detail next, N.C. Gen. Stat. § 44A-4 also protects persons, such as Plaintiff, who may have an interest in property subject to a lien under N.C. Gen. Stat. § 44A-2 by affording them notice of pending sales when possible.

Concededly, N.C. Gen. Stat. § 44A-2(e) is awkwardly written. However, when the statute is considered in light of the overall statutory scheme of which it is only a part, the Court concludes that the North Carolina courts would find that Defendants had a lien on Plaintiff's property in the circumstances of this case. A contrary finding would be unworkable and would inject too much uncertainty into North Carolina landlord-tenant law. For this reason, the North Carolina Supreme Court would likely reject Plaintiff's position if presented with this case. Plaintiff's motion for summary judgment on the issue of whether a lien existed should be denied. Further, because under this construction of section 44A-2(e) Defendants did have a lien and authority to sell

---

[6]Innocent parties whose property is subject to a lien would also likely have a viable cause of action against the tenant who possessed their property, but left it behind to be taken into possession by the lienor.

Plaintiff's property to satisfy the lien, Plaintiff cannot maintain its claim for conversion.  Defendants' motion for summary judgment should be granted as to the conversion claim.

### D. Compliance with N.C. Gen. Stat. § 44A-4 Notice

The parties' other significant point of disagreement concerning Plaintiff's statutory claim centers on whether or not Defendants substantially complied with the requirements for enforcing their lien through a public sale.  The critical statute here is N.C. Gen. Stat. § 44A-4, which allows the liens described in N.C. Gen. Stat. § 44A-2 to be enforced by private or public sales.  It also sets out the guidelines covering those sales. There are certain timing requirements listed in the statute, but Plaintiff does not raise any issues as to whether or not they were followed.  Of greater importance are the statute's two notice requirements.

First, where, as here, the property involved is not a motor vehicle, notice must be sent out if the obligation supporting the lien is unpaid for thirty days.  The notice must be sent to "the person having legal title[7] to the property, if reasonably ascertainable, and to the person with whom the lienor dealt if different by registered or certified mail, return receipt requested."  N.C. Gen. Stat. § 44A-4(b)(2).  It must also describe the property, "identify the lienor, the date that the lien arose, the general nature of the services performed and materials used or

_____

[7]Again, it may be assumed that "the person having legal title to the property" means a person with some incidents of ownership.

sold for which the lien is asserted, the amount of the lien, and that the lienor intends to sell the property in satisfaction of the lien," and tell the recipient that he is entitled to a judicial hearing on the validity of the lien, if requested within ten days. If the lienor is not informed by the recipient that a hearing is requested within ten days, a sale may be held.

There is no question that Defendants did not send this notice to Plaintiff. Nor does it appear that this notice was sent to any party, even Stimpson. Instead, Defendants sent Stimpson a Notice of Sale on May 2, 2006. The body of that notice reads, in its entirety, "Please be advised that there will be a public auction held on May 10th, 2006 at 10:00 AM for the property located in 2454-J N Fayetteville St, Asheboro, NC 27203. If you have any questions, [p]lease call me at the number listed below." (Brown Dep., Docket No. 72, Attach. 1, Ex. 73.) It was signed by Brandy Brown.

Although falling far short of the listed requirements in N.C. Gen. Stat. § 44A-4(b)(2), the May 2nd notice to Stimpson did have the effect of causing Stimpson to seek a judicial order preventing the sale.[8] The events that occurred at Stimpson's hearing are critical to this case. In filing his complaint, Stimpson stated that he was the owner of the property in the warehouse. However,

---

[8]These defects did not affect Plaintiff. There is no evidence that Defendants knew, or reasonably could have known, of Plaintiff and its ownership of some of the property in the warehouse at that time. Therefore, even had a fully conforming notice been sent to Stimpson, Plaintiff would still not have received notice at that point. Moreover, Stimpson, in fact, demanded a hearing and events would have then unfolded just as they eventually did anyway.

when placed on the witness stand at a preliminary injunction hearing, Stimpson made contrary statements. He testified that 95 percent of the property in the warehouse was owned by other persons. His motion for a preliminary injunction was denied, at least partially, for this reason. The hearing was attended by an attorney representing Defendants (not current counsel, however) and by Brandy Brown and another of Defendants' employees. Jeffrey Schwarz did not attend the hearing. (Id. at 81.)

So far as the record indicates, Stimpson did not testify as to the actual identities of the true owners of the property in the warehouse. Defendants' attorney apparently did not question him on the matter. There is also no indication that Defendants' employees attempted to speak with him at any time after the hearing to ascertain who owned the property, nor is there evidence that they attempted to discover the owners' identities by looking for paperwork in the warehouse. Brandy Brown, the same person who signed the May 2nd notice of sale, and one of the employees who heard Stimpson testify that he did not own the property, was aware that some type of paperwork and filing cabinets were located in Stimpson's office in the warehouse. She did not look at the paperwork. (Id. at 84.)

Following the hearing, Defendants sent Stimpson a second document entitled "Notice of Sale." This letter appears to be an attempt to comply with the notice requirements of N.C. Gen. Stat. § 44A-4(e). Subsection (e) deals with notice for public sales. It states that, not less than 20 days prior to the sale, the lienor

must give notice to "the person having legal title to the property if reasonably ascertainable, to the person with whom the lienor dealt if different, and to each secured party or other person claiming an interest in the property who is actually known to the lienor or can be reasonably ascertained." N.C. Gen. Stat. § 44A-4(e)(1)(a1) (emphasis added). The lienor must also publish a notice for two consecutive weeks in a local newspaper of general circulation in the county of the sale and post a copy on the door of the county courthouse. N.C. Gen. Stat. § 44A-4(e)(1)(b). The notices must include, among other information, "[t]he name of the person having legal title to the property if such person can be reasonably ascertained and the name of the person with whom the lienor dealt" and the "[the] amount due for which the lien is claimed." N.C. Gen. Stat. § 44A-4(f)(2) and (4) (emphasis added).

As with the notice required by subsection (b)(2), the record is clear that Defendants did not send the subsection (e) notice to Plaintiff. Also, there no sign that Defendants listed Plaintiff as a party holding legal title to the property described in any notice published or posted by Defendants. Their actions are no different than with the first notice. Defendants state that they did not know of any person having legal title to the property in the warehouse other than Stimpson. They assert they were not told that Plaintiff stored property there until well after the notice of sale had already gone to Stimpson. However, "not knowing" is not the legal standard. While it is true that Defendants had no actual knowledge of Plaintiff's existence and ownership of the property at

-21-

the time the second notice was sent, actual knowledge is not the standard by which their actions must be judged. Instead, N.C. Gen. Stat. § 44A-4(e) requires notice to be sent to persons whose ownership of the property to be sold is "reasonably ascertainable." The Court must decide whether Defendants complied with this standard.

Neither party cites North Carolina case law defining the term "reasonably ascertainable" in the context of Chapter 44A. However, the words must be given their plain meaning. Plaintiff states that the term "ascertain" means "'to find out with certainty." (Docket No. 76 at 7 (citing Webster's New World Dictionary 34 (3d College Ed. 1990).) A more expansive definition is "[t]o discover with certainty, as through examination or experimentation." The American Heritage College Dictionary 79 (3d Ed., 2000). The latter definition, and perhaps the former as well, suggests by implication, more than just a passive processing of information that one happens upon. In the context of this case, "reasonably ascertainable" means an active process of examination and inquiry aimed at discovering a fact and then acting with reasonable precaution. This definition may be implied here because, in other contexts, the North Carolina courts have found a duty to take action when defining the term "reasonably ascertainable." See, e.g., Barclays American/Mortgage Corp. v. BECA Enterprises, 116 N.C. App. 100, 446 S.E.2d 883 (1994)(information in public record is "reasonably ascertainable" and a party's efforts to search it are to be considered in a due diligence analysis associated with

foreclosures). Consequently, it is determined that Defendants had the duty to send notice of the sale not only to parties actually known to them, but also to parties whose identities they could have discovered through reasonable efforts.

Applying this definition to the facts of this case, it is undisputed that at least Defendant Schwarz Properties had been informed prior to the time the May 26th notice of sale was sent to Stimpson that other parties arguably held title or incidents of ownership to most of the property in the warehouse. Notwithstanding, there is no evidence that its employees took any action whatsoever to discover the identity of those parties. Neither they nor Schwarz Properties' counsel questioned Stimpson, despite having him on the witness stand in court. There apparently was no other attempt made to contact Stimpson, examine the paperwork that had been seized at the warehouse, or examine the contents of the warehouse to determine ownership. The utter lack of any attempt by Defendants to discover the true owners of the property in the warehouse, coupled with the possible relative availability of potential sources of information, would, looking at the evidence in a light most favorable to Plaintiff, easily support a finding that Defendants could have "reasonably ascertained" Plaintiff's identity and provided it with notice of the public sale, but did not do so. Defendants' contention that the Court must find that they complied with the notice requirements of N.C. Gen. Stat. § 44A-4(e) should be denied.

Of course, Defendants are not the only parties to request summary judgment regarding whether the statutory requirements were met. Plaintiff also asks for summary judgment on this point by requesting that the Court hold, as a matter of law, that Plaintiff was a "reasonably ascertainable" title holder to the property in the warehouse and that Defendants failed to give it the required notice. Certainly, Plaintiff presents a very strong case on this issue. However, in this instance, the facts must be looked at in the light most favorable to Defendants. While it can be said that possible sources of information were available to Defendants and that they failed to even look into the matter, there is less evidence concerning what they would have "necessarily" found if they had looked. For instance, while Stimpson could have been questioned on the stand, no evidence shows that he could or would have provided the names of the true owners at that time. Likewise, Brown could have looked through the paperwork in the warehouse, but it is not clear what she would have found. Stimpson's eventual ability to provide his attorney with the owners' names, coupled with testimony by Lashaun Cook that Stimpson kept a list of the owners of warehouse property in the warehouse as late as sometime in 2004 (Cook Dep., Docket No. 72, Attach. 5 at 13, 27-28), provide some indication of what Defendants could have discovered, but are not both strong and clear enough to be dispositive of the matter at summary judgment. The parties remain free to present further evidence on these issues at trial. For now, both Plaintiff's and Defendant Schwarz Properties' motions for summary judgment on this

-24-

question should be denied. For somewhat different reasons, however, Jeffrey Schwarz's motion for summary judgment should be granted on this claim.

As set out previously, Jeffrey Schwarz can be held liable only for his own actions. The real problem for Schwarz Properties is the possibly defective second notice, which was not sent to Plaintiff even though Plaintiff's identity and interest in the property may have been "reasonably ascertainable" to Schwarz Properties. However, the evidence is undisputed that Brown prepared and signed the notice. She merely notified Jeffrey Schwarz that she was going to send it. (Brown Dep., Docket No. 72, Attach. 1 at 90.) There is no evidence that Jeffrey Schwarz reviewed or approved the notice or its contents. Further, the evidence in the record is that Brown, not Schwarz, was aware of Stimpson's testimony that other persons owned most of the property in the warehouse. Plaintiff has pointed to no evidence that Schwarz knew of this testimony or that he ordered Brown not to follow up on it to discover other possible owners. There is no evidence that Jeffrey Schwarz either made or controlled the decision regarding to whom the notice was sent. For this reason, Plaintiff's claim cannot continue against him individually. Jeffrey Schwarz's motion for summary judgment on Plaintiff's statutory notice claim should be granted.

There are two remaining issues associated with Plaintiff's statutory notice claim which bear brief comment. First, Plaintiff points out that Defendants were actually notified of its existence

-25-

and identity just before the auction, both through the letter from Stimpson's attorney and the alleged telephone calls from Don Courtney.  The letter was received by Brown on behalf of Schwarz Properties.  However, there is no evidence that Jeffrey Schwarz saw it.  He has denied that he did.  There is also a factual dispute as to whether Courtney called Jeffrey Schwarz prior to the auction. Still, even if he did, both the letter and the calls came well after the second notice of sale had been sent to Stimpson.  It is clear that Schwarz Properties had a duty to send the statutorily required notice to all "reasonably ascertainable" parties with an interest in the property at the time the notice was sent to Stimpson.  However, Plaintiff has neither argued nor shown that North Carolina law would impose a continuing duty to send out notices if new information came in once an auction date had been set and notices sent.  The Court declines to enter this thicket on its own, especially because the case may well be resolved on the grounds discussed above, making a decision on this point unnecessary.  Therefore, in recommending that neither Plaintiff nor Schwarz Properties be granted summary judgment on the statutory notice issue, the Court has only considered information known or possibly knowable to Defendants at the time the second notice to Stimpson was sent.[9]

### E. Mitigation

---

[9]For this same reason, any late notice to Jeffrey Schwarz via a telephone call from Courtney would not subject him to individual liability.

Defendants also argue that Plaintiff failed to properly mitigate its damages because it did not pay off the lien according to N.C. Gen. Stat. § 44A-3 and because it did not bid on its property at the auction. They cannot prevail on this point. A party obviously cannot pay off a lien unless it has notice of the existence and the amount of the lien. At most, Plaintiff got only notice of the existence of the lien, and then on the night before the auction. Defendants have not shown that Plaintiff received notice of the amount of the lien prior to the auction or that it had an actual opportunity pay off the lien.[10] The problem is similar for the bidding argument. It is true that Courtney received notice of the auction and was present at the auction. However, there is also evidence that, due to the late notice, he was unable to obtain authority from his superiors to make bids. There is additional evidence that he was asked by auction officials acting on Defendants' authority to leave the auction under threat of arrest. He could not have bid on any property sold from that point forward. For these reasons, Plaintiff's statutory claim should go forward as to Defendant Schwarz Properties on the issue of proper notice under N.C. Gen. Stat. § 44A-4(e).

### F. Unfair or Deceptive Trade Practices

Defendants seek to dismiss Plaintiff's claim for unfair or deceptive trade practices. There, Plaintiff alleges that

---

[10]Another problem is that, if it is ultimately determined that Defendants did not provide proper notice to Plaintiff, the mitigation requirement may well include an obligation to pay off a third parties' lien to prevent an auction that was not being held in accordance with the proscribed statutory requirements.

Defendants' conduct amounted to such practices because they had actual knowledge that some of the property did not belong to Stimpson, knew that some of the property belonged to Plaintiff, and continued with the sale without following the proper statutory procedures. Defendants contend otherwise. Both parties seek summary judgment on this issue.

To establish an unfair or deceptive trade practices claim under North Carolina law, a litigant must show:

> (1) that the defendant engaged in conduct that was in or affecting commerce, (2) that the conduct was unfair or "had the capacity or tendency to deceive," and (3) "that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." <u>Pearce v. American Defender Life Ins. Co.</u>, 316 N.C. 461, 343 S.E.2d 174, 179-80 (1986). Occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury, but whether the conduct was unfair or deceptive is a legal issue for the court. <u>Hardy v. Toler</u>, 288 N.C. 303, 218 S.E.2d 342, 346-47 (1975); <u>accord</u> <u>United Laboratories, Inc. v. Kuykendall</u>, 322 N.C. 643, 370 S.E.2d 375, 389 (1988).

<u>Gilbane Bldg. Co. v. Federal Reserve Bank of Richmond, Charlotte Branch</u>, 80 F.3d 895, 902 (4th Cir. 1996); N.C. Gen. Stat. § 75-1.1(a). An act is considered unfair or deceptive if it is "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." <u>In re Kittrell</u>, 115 B.R. 873, 877 (Bankr. M.D.N.C. 1990).

Plaintiff has alleged no fraud or misleading statements to support a claim for deception. Therefore, its claim can only go forward if it can show an unfair trade practice. While Plaintiff has produced strong evidence of a breach of statutory notice requirements by Defendant Schwarz Properties, it has not produced

evidence that any such breach was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers" so that an unfair trade practice occurred. In fact, the evidence in the record indicates just the opposite.

The important actions undertaken by Defendants in this case were mainly undertaken either by Jeffrey Schwarz or Brandy Brown. Jeffrey Schwarz had overall control over the events surrounding the sale of the property, but he relied heavily on subordinates and legal counsel in handling the details of these matters. When he was called about Cook disrupting the auction, he called his attorney before telling auction officials to ask her to leave. Likewise, Courtney, Plaintiff's own representative, testified in his deposition that Schwarz told him that he was selling the property in accordance with a court order and that he should talk to his attorney. Employees at Action Auctions also reported that Schwarz made statements to them about selling the property pursuant to a court order. (Terri Coleman Dep., Docket No. 72, Attach. 4 at 11; Max Coleman Dep., Docket No. 72, Attach. 3 at 20.) Plaintiff points to no evidence to indicate that Schwarz, whether acting in his individual capacity or on behalf of Schwarz Properties, ever believed that there was a legal problem with the sale. To the contrary, all indications are that he believed there was full legal authority for the sale. This is not a case where he was conscious of a problem, but persisted with the sale.[11]

---

[11]It is true that Courtney may have told him there was a problem at the last minute. However, all indications are that Schwarz believed that the sale
(continued...)

Many of the details of the notice and sale were handled by Brown, who was admittedly inexperienced and unfamiliar with the proper procedures surrounding the sale. She testified that she relied on counsel and on a "law book" in handling the notice of the sale. (Brown Dep., Docket No. 72, Attach. 1 at 91.) While there is a legal question as to whether or not she could have reasonably ascertained Plaintiff's identity following the court hearing, there is no evidence that she purposefully, maliciously, or with blatant disregard, set out to wrongfully deprive Plaintiff of its property. Her actions may or may not have breached the statutory notice requirements, but they do not rise to the level of unfair or oppressive trade practices.

Two North Carolina cases are instructive on the matter. The first is <u>Love v. Pressley</u>, 34 N.C. App. 503, 239 S.E.2d 574 (1977). In that case, a landlord entered the premises of a tenant whose lease had not yet expired and disposed of the tenant's property. When the tenant called the rental agent to inquire about her property, she was told that the "clean-up" man had been there and was given the landlord's number. He never answered or returned her telephone calls. <u>Id.</u> at 505, 239 S.E.2d 576. Based on these facts, the trial judge found, and the North Carolina Court of

---

[11](...continued)
was proper based on the court order giving him possession of the property and the advice of his attorney. Nothing required him to give up his reliance on these things merely because Courtney, a person he had never met, suddenly called him in the middle of the auction and made allegations. There is no evidence that Schwarz ever subjectively believed that he was engaging in wrongful conduct.

Appeals agreed, that an unfair or deceptive trade practices claim was supported. Id. at 517, 239 S.E.2d at 583.

In Eley v. Mid/East Acceptance Corp. of N.C., Inc., 171 N.C. App. 368, 614 S.E.2d 555 (2005), the defendant's agents repossessed a truck pursuant to a valid lien. There was no question concerning the lien or the repossession of the truck. However, the truck was loaded at the time with watermelons that were not subject to the lien. The defendant's agents were aware of this, but did not allow Plaintiff time to unload the truck. The defendant also stymied Plaintiff's efforts to locate and retrieve the melons. The melons then spoiled in the sun. Id. at 370-71, 614 S.E.2d at 558-59. These facts also supported an unfair or deceptive trade practices claim.

The facts of the present case stand in stark contrast to the facts in Love and Eley. Defendants' possible breach of Plaintiff's statutory notice rights was not nearly as egregious as the landlord's entry on a premises he knew to still be under a lease in order to remove property or the lienor's taking of the watermelons while knowing that they were perishable and not subject to the lien. Moreover, the Defendants did not refuse to cooperate with Plaintiff in the same way as the defendants in the other cases. Here, the contacting of Defendants by Plaintiff came at the last minute, with the sale already having been advertised, scheduled, and imminent. Defendants had some reason to question the late letter from the unreliable and changeable Stimpson and in the circumstances had a right to be cautious about the last minute

telephone call from Courtney. Yet, they did not simply cut off contact or refuse to deal with Plaintiff altogether. They were acting pursuant to what they believed was a valid court order and proper procedures, and, moreover, Jeffrey Schwarz allegedly returned Courtney's call and suggested that Courtney speak with his attorney. None of Defendants' actions here were of the egregious nature as were the defendants' actions in the other cases. Plaintiff has not supplied sufficient evidence to support its unfair or deceptive trade practices claim. Therefore, its motion for summary judgment should be denied and Defendants' should be granted as to this claim as well.

**IT IS ORDERED** that all objections be filed on or before December 16, 2008 and responses by December 23, 2008.

**IT IS RECOMMENDED** that Plaintiff's motion for partial summary judgment (docket no. 72) be denied.

**IT IS FURTHER RECOMMENDED** that Defendants' motion for summary judgment (docket no. 70) be granted, except as to Plaintiff's second claim for relief based on a violation of the statutory notice provisions of N.C. Gen. Stat. § 44A-4 against Defendant Schwarz Properties, and that all other claims be dismissed, and that Defendant Jeffrey Schwarz be dismissed as a Defendant.

_____
**United States Magistrate Judge**

December 11, 2008